IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 2:05-cr-0158 |
| v. | ) |
| | ) Judge Thomas M. Hardiman |
| MICHAEL COATES, | ) |
| | ) |
| Defendant. | ) |

## OPINION

On June 8, 2005, a grand jury returned an indictment charging Defendant Michael Coates (Coates) with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g)(1). Presently before the Court is Defendant's Motion to Suppress Physical Evidence and Statements. For the reasons that follow, Defendant's Motion will be granted in part and denied in part.

I.   **Procedural History**

Defendant's Motion to Suppress, with case citations, was filed on December 7, 2005. The Government responded on December 27, 2005 and a hearing was held on February 15, 2006. The Court took the Motion under advisement and requested additional briefing from the parties because of the apparent dearth of federal caselaw pertinent to the seminal facts of this case. The Court suggested that counsel survey state court cases and the parties filed supplemental briefs pursuant to the Court's request. Accordingly, the Motion is now ripe for decision.

## II.  Findings of Fact

Detective Mark Redpath (Redpath) is a twelve year veteran of police work who has been assigned to the "impact squad" of the City of Pittsburgh Bureau of Police for the past six years. The "impact squad" focuses its efforts on combating street level drug activity and the violence resulting therefrom.  On the evening of October 27, 2004, Redpath and two other detectives were patrolling the Lawrenceville section of Pittsburgh, where they had made numerous drug-related arrests.  At approximately 9:00 p.m., Redpath's unmarked police car turned onto 44th Street, where Defendant Coates had stopped his Dodge Stratus to drop off a passenger.  As Redpath made the turn onto 44th Street, his vehicle and Coates' vehicle were facing one another.  Because the street was narrow, Redpath "almost had to come to a complete stop" to make the turn without striking Coates' vehicle.  As he began to proceed past the Dodge, Redpath observed Coates through the Dodge's windshield.[1]  When the two cars were at their closest, Redpath was five to ten feet away from Coates.

As he observed Coates through the windshield, Redpath saw Coates smoking a "blunt," which is a cigar that has been cut open, emptied of tobacco, and filled with marijuana.  Redpath believed the object being smoked by Coates was a blunt because of its appearance and Coates' manner of smoking it.  Specifically, Redpath observed that the cigar-like object being smoked by Coates was not perfectly cylindrical, suggesting to Redpath that it had been split open.  Furthermore, Redpath observed that Coates was holding the object between his thumb and forefinger, with his "fingers pinched together."

---

[1]  Redpath testified that the side windows of Coates' vehicle were tinted. As such, Redpath's only view of Coates was through the windshield of Coates' vehicle as Redpath passed him.

Based on his observation of Coates, Redpath initiated a traffic stop of Coates' vehicle, which had pulled away from where it had been stopped. Approaching Coates' vehicle on foot, Redpath and his partner, Detective Moreno, smelled marijuana. Upon asking Coates to exit the vehicle, Redpath observed an object fall to the ground outside of the car. This object indeed turned out to be a "blunt," *i.e.*, a cigar that had been split open and refilled with marijuana.

As Coates was placed under arrest for possession of the marijuana, but prior to the detectives administering *Miranda* warnings or asking him any questions, Coates told the detectives "I'm going to be straight up with you guys, man. I have a gun on me." Coates went on to explain that he had been cleaning out the home of his grandmother, who had passed away, when he found the gun. Redpath then recovered the gun from Coates' pocket.

Afterward, and before administering any *Miranda* warnings, Redpath expressed his condolences to Coates regarding the demise of his grandmother. Redpath then asked Coates how long ago his grandmother had passed away and Coates responded.[2]

Coates was charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g)(1). He has moved to suppress the physical evidence and statements obtained by the law enforcement officers, arguing that the traffic stop was initiated without reasonable suspicion in violation of the Fourth Amendment's provision against unreasonable searches and seizures and that his statements violated his Fifth Amendment right to be free from self-incrimination.

---

[2] Precisely what Coates said in response to this question remains disputed. Redpath claims that Coates told him that his grandmother had died three months prior to the day of the arrest; Coates insists that he told Redpath his grandmother died only three *weeks* earlier. For reasons that will be explained *infra*, the Court's disposition of this issue renders this dispute immaterial.

## II.    Legal Standard

A search or seizure is valid when the government's interest in "effective crime prevention and detection" served by the intrusion outweighs the individual's interest in freedom from that intrusion. *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). Brief investigative stops, including traffic stops, are valid when based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the suspicion that criminal activity is afoot. *Terry*, 392 U.S. at 21; *United States v. Delfin-Colina*, No. 05-2127, ___ F.3d ___, 2006 WL 2708496, *4 (3d Cir. Sept. 22, 2006). Reasonable, articulable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," and only a "minimal level of objective justification" is necessary for a *Terry* stop. *Delfin-Colina*, 2006 WL at *3 (citations omitted). Reasonable suspicion is measured by the totality of the circumstances. *Terry*, 392 U.S. at 22. Each factor contributing to an officer's suspicion may be "innocent in itself," if all the factors "taken together warranted further investigation." *Id.* Furthermore, law enforcement officials are certainly permitted to draw on their knowledge and experience when determining whether they have an objective and particularized basis to stop and search. *United States v. Arvizu*, 434 U.S. 266, 273-74 (2002).

## III.   Analysis

Defendant Coates raises two issues in his motion to suppress. First, the Court must decide whether the stop of Coates' vehicle was supported by reasonable suspicion. If Detective Redpath did not have reasonable suspicion to believe that criminal activity was afoot at the time he stopped Coates, then all physical evidence seized and all statements made by Coates as a

result of the stop must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). If, on the other hand, the Court concludes that Redpath's stop of Coates' vehicle was reasonable under the circumstances, then the breadth of Coates' motion -- which seeks to exclude "any and all alleged statements" made during the encounter -- will require the Court to reach a second issue: whether Coates' statements at the scene of the arrest should be suppressed pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

    **A.**    **Reasonable Suspicion Supported the Stop**

To determine whether Redpath had a reasonable suspicion that criminal activity was afoot at the time he initiated the stop of Coates' car, the Court will consider the totality of the circumstances surrounding the stop. Detective Redpath's testimony, which the Court finds fully credible, establishes that four factors supported Redpath's conclusion that Coates was engaged in unlawful behavior. These factors are: Redpath's training and experience, the view and appearance of the object being smoked by Coates, Coates' manner of holding the object he was smoking, and the location and timing of Redpath's observations. Each factor will be discussed *seriatim*.

    **1.**    **Training and Experience of Officer**

Although experience standing in isolation cannot create reasonable suspicion sufficient to justify an investigative detention, *Terry*, 392 U.S. at 15, experienced police officers may make inferences from facts that they observe "that might well elude an untrained person." *Arvizu*, 434 U.S. at 273. This standard assigns "great deference to the officer's knowledge of the nature and the nuances of the type of criminal activity that he [has] observed in his experience, almost . . . permitting it to be the focal point of the analysis." *United States v. Nelson*, 284 F.3d 472, 482

(3d Cir. 2002). Thus, even seemingly innocuous conduct may provide a basis for reasonable suspicion, when it "conforms to police officers' specialized knowledge of criminal activity." *United States v. Brown*, 448 F.3d 239, 251 (3d Cir. 2006).

Here, Redpath was a twelve year veteran of the police force who had been working for six years on the "impact squad," which specialized in drug crimes and primarily with "street level" drug crime and the violence associated therewith. During his tenure as a police officer, Redpath testified that he encountered "blunts" on numerous occasions, and made numerous arrests of persons smoking "blunts." As such, the Court finds that Detective Redpath has a high level of training and experience in recognizing and identifying "blunts," and recognizes that he is permitted to draw inferences commensurate with his experience.

### 2.    Appearance of Object Being Smoked

Redpath testified that he knew Coates was smoking marijuana in his car because, *inter alia*, the cigar-like object in Coates' mouth appeared to have been split open and re-rolled. According to Redpath, his experience and training have taught him that marijuana is commonly rolled into cigar wrappers in this fashion. Redpath testified that he was able to make this observation from 5-10 feet away from Coates. Because Coates' vehicle was stopped and Redpath was proceeding very slowly to pass him on a narrow street, Redpath testified credibly that he had a clear view of Coates through the windshield of Coates' vehicle.

Redpath explained further that it was apparent to him that the object being smoked by Coates was a "blunt," as opposed to a tobacco cigar, because the object was not perfectly cylindrical. In Redpath's experience, this indicated that it contained marijuana. Other courts have held that the appearance of a hand rolled cigarette or cigar may contribute to a finding of

reasonable suspicion, or sometimes even the more demanding "probable cause" standard. For example, in *People v. Poole*, the appearance of a cigarette contributed heavily to a finding of probable cause, where the cigarette was "bulged in the middle . . . and twisted at both ends," while hand-rolled tobacco cigarettes are irregular but not bulged, and "the ends are not twisted or if they are, only one end is twisted." 48 Cal. App. 3d 881, 884 (Ct. App. 1975).

### 3. Manner of Smoking

A "distinctive manner of smoking" a cigarette or cigar, suggestive of marijuana, is a valid factor to consider when determining whether reasonable suspicion exists. *Thomas v. Superior Court*, 22 Cal. App. 3d 972, 980 (Ct. App. 1972). Redpath testified that he observed Coates holding the object "between his thumb and forefinger" with "his fingers pinched together at the end." According to Redpath, this manner of smoking is indicative of someone smoking marijuana rather than a tobacco-filled cigar. Other courts have considered observations such as these when conducting reasonable suspicion analyses. *See, e.g., State v. Turmel*, 838 A.2d 1279, 1282 (N.H. 2003) (holding a cigar between thumb and index finger and cupping it inside the hand contributes to reasonable suspicion).

### 4. Location and Timing of Encounter

Detective Redpath testified that Lawrenceville -- the area where Coates' vehicle was observed and stopped -- is a high crime area where he and his unit have made numerous drug arrests. Location is relevant to a reasonable suspicion analysis when the officer knows of a "pattern of criminal activity" in the area, and the suspect's actions match that pattern. *United States v. Nelson*, 284 F.3d 472, 482 (3d Cir. 2002). The Supreme Court has cautioned, however, that merely being in a high crime area will not supply reasonable suspicion justifying a stop;

rather the suspicion must be particularized to the individual. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Additionally, the encounter took place after dark at approximately 9:00 p.m. While the time of day that an encounter with police occurs will only weigh slightly into the calculus of "reasonable suspicion," courts have considered it a factor. *See, e.g., State v. Andrews*, 565 N.E.2d 1271, 1273 (Ohio 1991).

### 5.     Totality of the Circumstances

Initially, the Court notes that this case presents a unique set of factual circumstances that distinguish it from nearly every reported opinion dealing with the reasonableness of an officer's suspicion that persons are smoking marijuana. After conducting an exhaustive search of both federal and state caselaw, the Court was able to find precious few cases where an officer had observed a person smoking an object that the officer believed to contain marijuana, yet did not have his visual observations corroborated by either the smell of burning marijuana or by the person making some form of furtive gesture before the stop was made. *See, e.g., Commonwealth v. Lucas*, 57 Va. Cir. 385, 386 (Cir. Ct. 2002) (furtive gestures); *United States v. Brooks*, 248 F.3d 1143 (5th Cir. 2001) (odor of marijuana combined with the prior observation that Brooks was smoking a cigar in a high crime area provided reasonable suspicion that was committing a crime). The government concedes that neither of these additional corroborative facts is present in the instant case. As such, the Court must endeavor carefully to discern whether the totality of the circumstances surrounding Redpath's stop of Coates' vehicle are sufficient to create reasonable suspicion in this case.

In support of his Fourth Amendment claim, Coates makes several arguments attempting to call into doubt the reasonableness of Redpath's suspicion that Coates was engaged in criminal

activity. First, Coates argues that the time of night and short duration of Redpath's exposure to Coates would have prevented Redpath from seeing all that he claimed to observe. However, the only evidence presented on this issue at the hearing was the testimony of Redpath. Defendant offered no testimony to contradict Redpath's account of what he saw before stopping Coates' vehicle. Because the Court finds Redpath fully credible in his testimony, Defendant's argument on this point is unavailing. Therefore, the Court will give full weight to Redpath's observations in considering the totality of the circumstances.

Coates next argues that the two primary observations made by Redpath -- namely that the object Coates' was smoking was not cylindrical and Coates' manner of holding the object -- could be consistent with legal behavior. Indeed, Redpath admitted during cross-examination that cigars tend to become less round as they become shorter, and that the object Coates was smoking was approximately two to two and one-half inches long at the time Redpath observed Coates holding it. However, the Court does not find persuasive Coates' argument that simply because the conduct observed by Redpath *could* be consistent with lawful activity, Redpath could not reasonably believe that Coates was engaged in illegal activity. In *Terry*, the Supreme Court held precisely the opposite, recognizing that even where each factor is "innocent in itself," reasonable suspicion will exist if all of the factors "taken together warranted further investigation." *Terry*, 392 U.S. at 22.

Here, the Court finds that the totality of the circumstances reveal that Redpath had reasonable suspicion to believe that Coates was engaged in criminal activity. Redpath observed a stopped vehicle whose driver was smoking a non-cylindrical object by pinching it at the end between his thumb and forefinger. At the time of Coates' arrest, Redpath was a twelve-year

police veteran who had spent at least six of those years primarily dealing with street level drug crimes. In light of this experience, Redpath was experienced with recognizing and identifying marijuana-filled "blunts." He immediately recognized both the appearance of Coates' cigar and his manner of holding it to be indicative of marijuana smoking. Additionally, Coates was in an area known for drug activity when Redpath observed him. Taken together, the facts and the reasonable inferences that Redpath was entitled to make in light of his extensive experience with drug crimes rendered reasonable his suspicion that Coates was engaging in criminal activity, *i.e.*, smoking marijuana. Although Redpath could not be positive that Coates was smoking marijuana, his decision to initiate a traffic stop of Coates was not merely a "hunch" as suggested by Defendant's counsel. Rather, the Court finds that Detective Redpath's decision was based on reasonable suspicion supported by articulable facts. Therefore, the seizure of Coates' "blunt" and his firearm did not violate Coates' Fourth Amendment right to be free from unreasonable searches and seizures.

### B. *Miranda* Requires The Suppression of Coates' Statement Regarding The Timing Of His Grandmother's Death

Having determined that the traffic stop was supported by probable cause, the Court next must consider the admissibility of statements Coates made to the officers.

Initially, the Court notes that the first statement made by anyone at the scene of the traffic stop occurred when Coates volunteered: "I'm going to be straight up with you guys, man. I have a gun on me." Under *Miranda* and its progeny, such spontaneous utterances are clearly admissible, even when the suspect is in custody, because there is no "interrogation." As the Supreme Court stated in *Miranda:* "(v)olunteered statements of any kind are not barred by the

Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona,* 384 U.S. 436, 478 (1966). Accordingly, this statement by Coates will not be suppressed. *See also U.S. v. Conley,* 156 F.3d 78, 83 (1st Cir. 1998); *U.S. v. Rhodes,* 779 F.2d 1019, 1032 (4th Cir. 1985); *U.S. v. Foskey,* 636 F.2d 517, 522 (D.C. Cir. 1980).

In addition to his spontaneous utterance, however, Coates made another statement in response to questioning by the police that must be suppressed. In determining whether an individual is in custody, the ultimate inquiry is "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125 (1983). In *Rhode Island v. Innis,* the Court explained that interrogation within the meaning of *Miranda* refers "to any words or actions on the part of the police (other than those normally attendant to an arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. 291, 301 (1980).

There is no reasonable dispute that the traffic stop in this case had ripened into a full-blown custodial interrogation once Detective Redpath asked Coates about his grandmother's death. At the suppression hearing, Redpath testified that he had removed the handgun from Coates' pocket and placed him under arrest before inquiring about the timing of his grandmother's death. Thus, Coates clearly was in custody. *See Beheler,* 463 U.S. at 1125. Although Redpath denied knowing that asking Coates about how long his grandmother had been deceased could have led to an inculpatory answer, Redpath's intent is irrelevant. *See United States v. Braxton,* 99 F. Supp.2d 567, 570 (E.D. Pa. 2000) (noting that the "reasonable likelihood" definition focuses primarily upon the perceptions of the suspect rather than the intent of the police). Applying an objective standard, it should have appeared reasonably likely to

Detective Redpath that his question could elicit an inculpatory response -- particularly because the answer to such a question would make Coates' stated reason for carrying the handgun more or less credible, depending upon the content of that answer. Because Coates was not read *Miranda* warnings before responding to Redpath's query as to when his grandmother had died, the Court finds that Redpath's question and the answer it elicited from Coates must be suppressed.

BY THE COURT:

Dated: October 23, 2006

Thomas M. Hardiman
United States District Judge

cc: All counsel of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 2:05-cr-0158 |
| v. | ) |
| | ) Judge Thomas M. Hardiman |
| MICHAEL COATES, | ) |
| | ) |
| Defendant. | ) |

### ORDER

AND NOW, this 23rd day of October, 2006 after a hearing on Defendant's Motion to Suppress (Doc. No. 25) and in consideration of the briefs filed thereafter, it is hereby

ORDERED that said Motion is GRANTED IN PART and DENIED IN PART consistent with and for the reasons set forth in the Opinion filed herewith.

BY THE COURT:

*Thos M. Hardiman*

Thomas M. Hardiman
United States District Judge